**Michael Grinblat** (4159752)
Law Offices of Michael Grinblat
10 East 39th Street, 12th Floor
New York, NY 10016
Tel: (347) 796-0712
Fax: (212) 202-5130
Email: michael.grinblatesq@gmail.com
*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## IN AND FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SEMYON GRINBLAT**, individually and on behalf of all others similarly situated, | **SECOND AMENDED COMPLAINT** |
| Plaintiff, | |
| -against- | **CASE NO.: 19-cv-7015-CBA-ST** |
| **THE WITKOFF GROUP LLC**, **LOIS WITKOFF**, **MARTIN BIRNBAUM**, **JOHN DOE 1-X**, persons yet unknown, **Limited Liability Companies, Partnerships, Corporations 1-X**, entities yet unknown, | **JURY DEMANDED** |
| Defendants. | |

## CIVIL COMPLAINT

SEMYON GRINBLAT ("Plaintiff"), as and for his complaint against Defendants, respectfully brings before the Court the below allegations.

## STATEMENT OF PLAINTIFF'S CLAIMS

1. This is an action under Title III of the Americans with Disabilities Act of 1990 (the "ADA") to enjoin unlawful discrimination based on disability. Plaintiff was discriminated against on the basis of disability and denied full and equal enjoyment of the

1

goods, services, facilities, privileges, advantages, or accommodations of the place of public accommodation owned, leased, leased to, controlled, managed, or operated, by Defendants, THE WITKOFF GROUP LLC, LOIS WITKOFF, MARTIN BIRNBAUM, JOHN DOE 1-X, persons yet unknown, Limited Liability Companies, Partnerships, Corporations 1-X, entities yet unknown.

2. Plaintiff files this action for himself, and those similarly situated, complaining of the violations of Title III of the ADA. This action is brought under the ADA, 42 U.S.C. §12182, §12183 and §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – the ADA's Accessibility Guidelines, 28 CFR Part 36, subpart D, the 2004 ADA Accessibility Guidelines ("ADAAG") at 36 CFR Part 1191, appendices B and D, 2010 ADA Standards for Accessible Design (hereinafter "2010 Standards"), the Building Code of the State of New York, as well as New York State Civil Rights Law §40-c and §40-d, New York State Human Rights Law §296 and New York City Human Rights Laws [Administrative Code] §8-107.

3. Plaintiff seeks compensatory, statutory and punitive damages, including, but not limited to, damages for personal injuries, pain of body and mind, declaratory and injunctive reliefs, attorney's fees, expert fees and costs against Defendants, as well as such other relief as the Court deems to be just and proper.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §451, §1331, §1337, §1343, §2201, §2202 and 42 U.S.C.A. §12181, *et seq.*, as it involves federal questions regarding the deprivation of Plaintiff's rights under the ADA.

5. This Court has supplemental jurisdiction over Plaintiff's allegations arising from Defendants' state law violations pursuant to 28 U.S.C. §1367(a).

6. Venue is proper in this district pursuant to 28 U.S.C. §1391(b), because all events, or omissions, giving rise to this action, and alleged herein, occurred in this district. Venue is also proper in this district, because Defendants' property, a public accommodation, which is the subject of this action, is located in, and does business within, this judicial district.

## **PARTIES**

7. Plaintiff, SEMYON GRINBLAT, is, and has been at all times material hereto, a resident of Monmouth County, New Jersey.

8. Plaintiff is disabled and is expressly authorized under §308 of the ADA, 42 U.S.C. §12188(a) – incorporating by reference the remedies and procedures found in 42 U.S.C. 2000a-3, §204 of the Civil Rights Act of 1964 – to bring this action.

9. Defendants, THE WITKOFF GROUP LLC, and/or LOIS WITKOFF, and/or MARTIN BIRNBAUM, own, and/or lease, and or lease to, and/or have control over, and/or manage, and/or maintain, and/or designed, and/or built, and/or constructed, and/or altered, and/or operate, and at all relevant times operated, the store, and/or pharmacy, "Rite Aid" and/or the parking lot adjacent to it, which is provided for the use of the store's customers.

10. The aforementioned store, and/or pharmacy, Rite Aid, and the adjacent parking lot are the subjects of this lawsuit and are located at 47-07 Broadway, Astoria, NY 11103, hereinafter referred to as the "Subject Facility".

11. Upon information and belief, in 2019 Walgreens purchased Rite Aid and the Subject Facility may now be operated under either the name "Rite Aid" or "Walgreens".

12. Upon information and belief, Defendant, THE WITKOFF GROUP LLC, is the landlord of the Subject Facility and has a lease with Rite Aid and/or Walgreens.

13. Upon information and belief, under the lease with Rite Aid and/or Walgreens, Defendant, THE WITKOFF GROUP LLC, is responsible for construction, and/or alteration, and/or design, and/or maintenance of the parking lot of the Subject Facility.

14. Upon information and belief, Defendant, THE WITKOFF GROUP LLC, owns, and/or leases to Rite Aid and/or Walgreens, and/or is the landlord of the Subject Facility, and/or manages, and/or maintains, and/or has control over, and/or designed, and/or marked, and/or placed signs on, and/or built, and/or constructed, and/or altered, and/or operates, and at all relevant times operated, the parking lot, adjacent to the store and/or pharmacy, Rite Aid and/or Walgreens, which is provided for the exclusive use of Rite Aid's or Walgreens' customers.

15. Defendant, THE WITKOFF GROUP LLC, is a domestic for-profit limited liability company, organized under the laws of New York.

16. Defendant, THE WITKOFF GROUP LLC, is licensed to conduct business activities in New York State with the New York Department of State.

17. The New York Department of State's website shows that Defendant, THE WITKOFF GROUP LLC, has a registered agent, located at Corporation Service Company, 80 State Street, Albany, NY 12207-2543.

18. The New York Department of State's website also shows that it will mail process, if accepted on behalf of the entity, Defendant THE WITKOFF GROUP LLC, to the following address: Corporation Service Company, 80 State Street, Albany, NY 12207-2543.

19. The website of the New York City Department of Finance, Office of the City Register, contains a Deed, which shows that the commercial parking lot, on which the Subject Facility is located, is owned by Defendants LOIS WITKOFF and MARTIN BIRNBAUM, as tenants-in-common.

20. Defendant LOIS WITKOFF, is an individual.

21. The aforementioned Deed shows that Defendant, LOIS WITKOFF, is one of the owners of the commercial lot, on which the Subject Facility is located.

22. Upon information and belief, Defendant LOIS WITKOFF is a landlord and leases her building and land, on which the parking lot of the Subject Facility is located, to Rite Aid and/or Walgreens.

23. Upon information and belief, Defendant LOIS WITKOFF at all relevant times was, and currently is, either an owner, landlord, lessor, or operator of the commercial real estate lot in Queens County, on which the Subject Facility is located, and of the building, in which it operates.

24. The Deed shows that Defendant LOIS WITKOFF, has the following address: 9 Red Ground Road, Old Westbury, NY 11568.

25. A skip-trace search performed by Praetorian Investigations, LLC, in February 2020, indicated that Defendant LOIS WITKOFF has the following address: 40 W 57th Street, STE 1620, New York, NY 10019-4001.

26. Defendant MARTIN BIRNBAUM is an individual.

27. Upon information and belief, Defendant MARTIN BIRNBAUM is a landlord and leases his building and land, on which the parking lot of the Subject Facility is located, to Rite Aid and/or Walgreens.

28. Upon information and belief, Defendant MARTIN BIRNBAUM at all relevant times was, and currently is, either an owner, landlord, lessor, or operator of the commercial real estate lot in Queens County, on which the Subject Facility is located, and of the building, in which it operates.

29. The Deed shows that Defendant MARTIN BIRNBAUM has the following address: 372 Central Park West, New York, NY 10025.

30. A skip-trace search performed by Praetorian Investigations, LLC, in March 2020, indicated that Defendant MARTIN BIRNBAUM has the following address: 372 Central Park West, Apt. 14M, New York, NY 10025-8240.

31. Defendants, THE WITKOFF GROUP LLC, LOIS WITKOFF, and MARTIN BIRNBAUM, operate the Subject Facility, which is a pharmacy, and/or a store, and/or a sales establishment. The Subject Facility is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 CFR §36.104 Place of public accommodation (5), New York State Human Rights Law §292(9) and New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

32. Defendants JOHN DOE 1-X and Limited Liability Companies, Partnerships and Corporations 1-X are persons or entities yet unknown, but who or which might share liability as owners or tenants of the Subject Facility. At all relevant times they might have been, and currently might be, either owners, lessors, or operators of the commercial real estate lot in Queens County, on which the Subject Facility is located, and of the building in which it operates. Either one or several of them might be a landlord and lease its/their building and land, on which the parking lot of the Subject Facility is located, to

Defendants THE WITKOFF GROUP LLC, LOIS WITKOFF, and MARTIN BIRNBAUM.

33. Plaintiff reserves the right to amend this Complaint to add such persons or entities as Defendants when discovered during the course of this action.

34. Either one, or all, of Defendants, simultaneously, or at different times, at all relevant times, was an owner, and/or landlord, and/or lessor, and/or lessee, and/or tenant, of the commercial lot in Queens County, on which the Subject Facility is located, who jointly, or severally, owned, and/or leased, and/or managed, and/or had control over, and/or designed, and/or constructed, and/or built, and/or altered, and/or modified, and/or painted, and/or marked, and/or placed signs on, and/or operated, and/or maintained, the parking lot adjacent to the store and/or pharmacy, Rite Aid, and/or Walgreens, which is provided for the purpose of enabling customers of the store and/or the pharmacy to park and shop at the Subject Facility.

35. Either one of Defendants, or all of them, jointly or severally, simultaneously, or at different times, at all relevant times, was an owner, and/or landlord, and/or lessor, and/or lessee, and/or tenant, and/or managed, and/or had control over, and/or operated, and/or designed, and/or constructed, and/or built, and/or painted, and/or marked, and/or placed signs on, and/or maintained, and/or altered the building, and/or the pharmacy, and/or the store, and/or the sales establishment, which is operated by Defendants, THE WITKOFF GROUP LLC, LOIS WITKOFF, and MARTIN BIRNBAUM.

36. Defendants are jointly and severally liable for the design, construction, maintenance, management, control, alteration and/or operation of the parking lot, which is part of the Subject Facility.

## CLASS ACTION

37. Plaintiff brings this suit for declaratory and injunctive reliefs and as a class action, pursuant to F.R.C.P. 23, on behalf of all those similarly situated who, as persons who must use wheelchairs by reason of various disabilities, and who use or desire to use the services and accommodations offered to the public by Defendants, are protected by, and are beneficiaries of, the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

38. Plaintiff, complaining for himself, and all other similarly situated disabled individuals in the City and State of New York, hereby alleges the following:

   a. The class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

   b. There are questions of law, or fact, common to the class, which predominate over any questions affecting only individual members;

   c. The claims or defenses of the representative party are typical of the claims, or defenses, of the class;

   d. The representative party will fairly and adequately protect the interests of the class; and

   e. A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

39. The claims of Plaintiff are typical of those of the class. The class, similarly to Plaintiff, was also not able to have access to the Subject Facility because of the architectural barriers.

40. Plaintiff will fairly and adequately represent and protect the interests of the members of the class, because, in accordance with Fed. R. Civ. P. 23(g), he has retained, and is represented by, an experienced counsel, who has done the work in identifying and investigating potential claims in the action, who knows the applicable law, who may commit resources to representing the class, who would represent Plaintiff in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the class.

41. A class action may be maintained under Fed. R. Civ. P. 23(a), which is satisfied, as prosecuting separate actions by, or against, individual class members would create a risk of adjudications with respect to them that, as a practical matter, would be dispositive of the interests of the other members, not parties to the individual adjudications, or would substantially impair, or impede, their ability to protect their interests. That risk includes, but is not limited to, Defendants removing the architectural barriers without either compensating members of the class, or paying them compensatory, and/or statutory, and/or punitive damages, for discrimination, discomfort, personal injuries, pain of body and mind, emotional distress, inconvenience and humiliation, which the class members have suffered as a result of Defendants' actions, which violated the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

42. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2), because Defendants had acted, or refused to act, on grounds that apply generally to the class, so that final injunctive relief, or corresponding declaratory relief, is appropriate respecting the class as a whole.

43. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3), because questions of law, or fact, common to class members, clearly predominate over any questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

44. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people who use wheelchairs in the Eastern District of New York.

45. Clarity, consistency and uniformity in law will also be preserved, as maintenance of this lawsuit as a class action will likely eliminate the possibility of inconsistent verdicts, which may be issued, if plaintiffs were to initiate individual lawsuits against Defendants.

46. References to Plaintiff are to be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## STATUTORY SCHEME

47. On July 26, 1990, United States Congress enacted the ADA, establishing important civil rights for individuals with disabilities, including the right to full and equal enjoyment of goods, services, facilities, privileges and access to places of public accommodation.

48. Congress made the following findings:

    a. Some 43,000,000 Americans have one or more physical or mental disabilities, and this number is increasing as the population as a whole is growing older;

    b. Historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

c. Discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodation, education, transportation, communication, recreation, institutionalization, health services, voting and access to public services;

d. Individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and regulation to lesser services, programs, activities, benefits, jobs or other opportunities; and

e. The continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. §12101(a)(1)-(3), (5) and (8)

49. Furthermore, Congress also explicitly stated that the ADA had to:

a. Provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

b. Provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

c. Invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. §12101(b)(1)(2) and (4)

50. Furthermore, pursuant to 42 U.S.C. §12182 and 28 CFR §36.201(a), the congressional

intent was to ensure that no place of public accommodation may discriminate against an

individual on the basis of such individual's disability, with regard to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations at that place of public accommodation.

51. Congress provided commercial businesses at least 18 months from enactment to make their facilities compliant with the regulations in the ADA. The effective date of Title III of the ADA was January 26, 1992, or January 26, 1993, if defendant has ten (10), or fewer, employees and gross receipts of $500,000, or less. 42 U.S.C. §12183; 28 CFR §36.508(a).

52. The 2000 United States census indicates that in the civilian non-institutionalized population more than 49.7 million people in the United States have a disability. The census also indicates that more than 1.39 million New Yorkers have a mobility disability.

53. The ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws recognize individuals with disabilities as a protected class. 42 U.S.C. §12182(a)

54. It is unlawful for a private entity, which owns, leases, leases to, or operates a place of public accommodation, to discriminate against an individual with a disability. 42 U.S.C. §12182(b)(1)(A), 28 CFR §36.201(a) and (b)

55. Pursuant to the mandates of 42 U.S.C. §12134(a), on July 26, 1991, the Department of Justice, Office of the Attorney General, promulgated Federal Regulations to implement the requirements of the ADA, known as the ADAAG, 28 CFR §36, under which it may obtain civil penalties of up to $110,000 for the first violation and $150,000 for any subsequent violation.

56. The landlord, who owns the building that houses a place of public accommodation and the tenant, who owns, or operates the place of public accommodation, have a non-delegable duty to comply with the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws. 28 CFR §36.201(a) and (b)

57. The Subject Facility affects interstate commerce within the meaning of the ADA. 42 U.S.C. §12181(7)(E) and 28 CFR §36.104 Place of public accommodation (5).

58. Regardless of any contractual provisions stating otherwise, the landlord and owner of the property, which houses the public accommodation, cannot escape liability for the tenant's failure to comply with the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws. 28 CFR §36.201.

59. Discriminatory intent is not required to establish liability under the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

60. One type of disability discrimination is the failure of an owner, or an operator, of a public accommodation to remove those architectural barriers, removal of which is readily achievable.

> A public accommodation shall remove architectural barriers in existing facilities, including communication barriers that are structural in nature, where such removal is readily achievable, i.e., easily accomplishable and able to be carried out without much difficulty or expense.

28 CFR §36.304

61. If an individual with a disability is dissuaded from entering, or receiving services of a place of public accommodation, because of the existence of an architectural barrier, the landlord and tenant will be guilty of discrimination on the basis of disability.

62. Defendants must remove all barriers, removal of which is readily achievable, that deny an individual with a disability the opportunity to participate in, or benefit from, services, or accommodations, on the basis of their disability. 28 CFR §36.304

63. Removal of the architectural barriers is readily achievable by Defendants.

64. Plaintiff is informed and believes, and therefore alleges, that the Subject Facility has begun operations, and/or undergone substantial remodeling, repairs and/or alterations, since January 26, 1990, and/or has sufficient income to make readily achievable accessibility modifications.

**FACTUAL ALLEGATIONS AND FIRST CAUSE OF ACTION**

**Violations of the ADA**

65. Plaintiff, who was born in 1949, is an elderly man aged beyond his 71 years. He suffers from debilitating diseases and was diagnosed with a neurological condition, which affects his walking. Plaintiff's treating neurologist determined that he has gait dysfunction, the causes of which include peripheral neuropathy due to diabetes mellitus, chronic right basilar ganglia lacunar infarct and cerebellar ataxia. Plaintiff's treating neurologist also determined that he has essential tremor. Furthermore, Plaintiff has decreased vision due to glaucoma and is blind in the right eye. Plaintiff's gait is unsteady and he falls when he walks short distances. His treating neurologist prescribed him a wheelchair and a handicapped parking placard. Plaintiff obtained the wheelchair and uses it regularly. The

New Jersey Motor Vehicle Commission issued him a disabled person parking placard together with a handicapped identification card. The handicapped placard can be used in any car, in which Plaintiff is travelling. Plaintiff relies on his wheelchair and parks appropriately in handicapped accessible parking spaces. He also needs appropriate and statutorily mandated space next to that car, so that he may transfer from the car to the wheelchair. Plaintiff is disabled under the statute, which in pertinent part states that

> *Disability* means, with respect to an individual, a physical or mental impairment that substantially limits one or more of the major life activities of such individual… . The phrase *major life activities* means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working.

28 CFR §36.104

66. Plaintiff's adult son visits Plaintiff, manages his care and takes him to places Plaintiff wants to visit, including stores, supermarkets, pharmacies, restaurants, parks, doctors and medical facilities in New Jersey, where he currently resides, and New York, where he previously resided for decades and where his son and friends still reside.

67. In August 2019, Plaintiff came to Defendants' Subject Facility by car to enjoy full and equal access to, and the benefits of, all the accommodations and services offered at Defendants' properties.

68. Defendants operate the parking lot, adjacent to the store, and/or pharmacy, Rite Aid, and/or Walgreens, which they provide to enable their customers to park in.

69. The parking lot, adjacent to Rite Aid and/or Walgreens and operated by Defendants, exists for exclusive use by customers of Rite Aid and/or Walgreens.

15

70. Either one, or all, of Defendants attached to the wall of Rite Aid store, located in the parking lot, the sign, which contains the following text in red capital letters: "PARKING FOR RITE AID CUSTOMERS ONLY. OTHER CARS TOWED AWAY AT OWNERS EXPENSE."

71. Either one, or all, of Defendants attached to the wall of Rite Aid store, located in the parking lot, the sign, which contains the following text in blue capital letters: "CUSTOMER PARKING ONLY! ALL OTHERS TO BE TOWED AWAY AT OWNER'S EXPENSE".

72. Defendants own the parking lot of the Subject Facility and/or lease it to Rite Aid and/or Walgreens, and/or operate it, and/or designed it, and/or painted it, and/or marked it, and/or placed signs on it, and/or exercise control over it, and/or manage it, and/or maintain it, and/or altered it since 1992.

73. The Subject Facility is a public accommodation within the meaning of Title III of the ADA, 42 U.S.C. §12181(7)(E) and 28 CFR §36.104 Place of public accommodation (5), New York State Human Rights Law §292(9) and New York City Human Rights Law, Admin. Code of the City of New York, §8-107(4).

74. Defendants designated, designed and constructed the parking lot for the Subject Facility's customers.

75. There are more than ten parking spaces in the parking lot of Defendants' Subject Facility.

76. One of the parking spaces in the Subject Facility's parking lot is identified as a handicapped parking space by the blue marking lines on the pavement.

77. Plaintiff and his son came to the Subject Facility by car and parked in the handicapped parking space in its parking lot.

78. There is no access aisle in the parking lot of the Subject Facility.

79. The parking space to the right of the designated handicapped parking space was occupied by another vehicle.

80. There is no parking space to the left of the designated handicapped parking space.

81. Plaintiff had to transfer to his wheelchair on the left side of the designated handicapped parking space, in traffic, while vehicles entered and left the busy parking lot, endangering his safety and causing emotional distress to him.

82. Plaintiff barely avoided falling while transferring from the car to the wheelchair, because the ground surface next to the handicapped space is impermissibly steep.

83. When Plaintiff sat on his wheelchair next to the car, it rolled down the steep slope of the ground surface of the parking lot.

84. Plaintiff tried to stop the wheelchair from rolling down, but was not able to do so, because the slope is steep. Consequently, he had to rely on the assistance of his son to stop the wheelchair from rolling.

85. While Plaintiff was paying for the items he was purchasing at the register, he was not able to extend his knees and toes under the counter, because there is no knee and toe space under it. As a result, Plaintiff had to rely on his son's assistance to hand his debit card to the cashier.

86. On the way back, Plaintiff barely avoided falling on the steep surface of the parking lot while he was transferring from the wheelchair to the car.

87. The Subject Facility's parking lot was either designed by people, who did not have Plaintiff and his needs, and needs of others similarly situated, in mind, to accommodate him and facilitate his access to the Subject Facility, or worse.

88. Frustrated, disappointed and humiliated, Plaintiff left the Subject Facility's parking lot.

89. The Subject Facility is located not far from Plaintiff's son's home, in Astoria, Queens. Plaintiff enjoys visiting that neighborhood and comes there often.

90. Defendants' Subject Facility is conveniently located and Plaintiff intends to visit it, purchase the items offered for sale in it and enjoy its services, as soon as the architectural barriers are removed.

91. Plaintiff has difficulties gaining access to the Subject Facility, because of the unlawful architectural barriers, and therefore suffered an injury in fact.

92. Since at least August 2019, Defendants have engaged in unlawful practices in violation of the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

93. Plaintiff has difficulties visiting Defendants' Subject Facility, continues to be discriminated against due to the architectural barriers, which remain at the Subject Facility, all in violation of the ADA, the New York State Civil Rights Laws, and the New York State and the New York City Human Rights Laws.

94. The barriers to access the Subject Facility have effectively denied Plaintiff ability to visit the property and have caused him personal injuries, including, but not limited to, pain of body and mind, emotional distress, embarrassment, humiliation and frustration.

95. Because the Subject Facility is a public accommodation, Defendants are responsible for complying with the ADA. 28 CFR §36.304.

96. The numerous architectural barriers to access the Subject Facility have endangered Plaintiff's safety.

97. Defendants' Subject Facility violates 42 U.S.C. §12181, §12182, §12183, §12204 of the ADA, 28 CFR §36.302 and §36.304.

98. The Department of Justice ("DOJ") published revised regulations for Title III of the ADA in the Federal Register on September 15, 2010. "These regulations adopted revised, enforceable accessibility standards called the 2010 ADA Standards for Accessible Design, '2010 Standards'". (See, 2010 Standards, Overview) These standards "set minimum requirements – both scoping and technical – for newly designed and constructed, or altered … public accommodation, and commercial facilities to be readily accessible to and usable by individuals with disabilities." Id. The DOJ provided that document in one publication and it includes the 2010 Standards for public accommodation and commercial facilities, which consist of the Title III regulations at 28 CFR Part 36, subpart D, and the 2004 ADAAG at 36 CFR Part 1191, appendices B and D.

99. Defendants are discriminating against Plaintiff, and others similarly situated, because at their Subject Facility they are denying him access to, as well as full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, and its parking lot, by means of the architectural barriers, the existence of which is in violation of the ADA, including, but not limited to, those listed below.

100.    "**Identification.** Parking *space* identification signs shall include the International Symbol of *Accessibility* complying with 703.7.2.1. Signs identifying van parking *spaces* shall contain the designation "van accessible." Signs shall be 60 inches (1525 mm) minimum above the finish floor or ground surface measured to the bottom of the sign." 2010 Standards §502.6.

101.    There is no sign containing the designation "van accessible" in the Subject Facility's parking lot.

102.    There is no sign, located above the finish floor, or ground surface, identifying the handicapped parking space in the Subject Facility's parking lot.

103.    "**Van Parking Spaces.** For every six or fraction of six parking *spaces* required by 208.2 to comply with 502, at least one shall be a van parking *space* complying with 502." 2010 Standards §208.2.4.

104.    Defendants failed to identify a handicapped parking space for a van.

105.    "**Vehicle Spaces.** Car parking *spaces* shall be 96 inches (2440 mm) wide minimum and van parking *spaces* shall be 132 inches (3350 mm) wide minimum, shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3. **EXCEPTION:** Van parking *spaces* shall be permitted to be 96 inches (2440 mm) wide minimum where the access aisle is 96 inches (2440 mm) wide minimum." 2010 Standards §502.2.

106.    The designated handicapped parking space at the Subject Facility is 117 inches wide.

107.    There is no handicapped parking space at the Subject Facility's parking lot, which complies with the width requirements for a van handicapped parking space.

108.    "**Floor or Ground Surfaces.** Access aisles are required to be nearly level in all directions to provide a surface for wheelchair transfer to and from vehicles. The exception allows sufficient slope for drainage. Built-up curb ramps are not permitted to project into access aisles and parking spaces because they would create slopes greater than 1:48." 2010 Standards §Advisory 502.4.

20

109.    "**Width.** Access aisles serving car and van parking *spaces* shall be 60 inches (1525 mm) wide minimum." 2010 Standards §502.3.1.

110.    "**Length.** Access aisles shall extend the full length of the parking *spaces* they serve." 2010 Standards §502.3.2.

111.    "**Marking.** Access aisles shall be marked so as to discourage parking in them." 2010 Standards §502.3.3.

112.    "**Advisory 502.3.3 Marking.** The method and color of marking are not specified by these requirements but may be addressed by State or local laws or regulations. Because these requirements permit the van access aisle to be as wide as a parking space, it is important that the aisle be clearly marked." 2010 Standards Advisory §502.3.3.

113.    There is no access aisle at the Subject Facility.

114.    "**Floor or Ground Surfaces.** Parking *spaces* and access aisles serving them shall comply with 302. Access aisles shall be at the same level as the parking *spaces* they serve. Changes in level are not permitted. **EXCEPTION:** Slopes not steeper than 1:48 shall be permitted." 2010 Standards §502.4.

115.    Thus, maximum permissible slopes of handicapped parking spaces and access aisles serving them must not be steeper than 2.08%. 2010 Standards §502.4.

116.    Defendants grossly violated §502.4 of 2010 Standards.

117.    The designated handicapped parking space has a slope of 6.55%, which is equivalent to 1:15.27.

118.    The designated handicapped parking space has a cross slope of 3%, which is equivalent to 1:3.33.

119.     "**General**. Floor and ground surfaces shall be stable, firm, and slip resistant and shall comply with 302." 2010 Standards §302.1.

120.     In the Subject Facility's parking lot, the ground surface of the designated handicapped parking space is cracked and uneven.

121.     The individual Plaintiff, and all others similarly situated, will continue to suffer discrimination and injury without the immediate relief provided by the ADA, as requested herein. In order to remedy this discriminatory situation, Plaintiff requires an inspection of Defendants' Subject Facility in order to measure and photograph architectural barriers that are in violation of the ADA to determine all of the areas of non-compliance with the law.

122.     Defendants have failed to remove architectural barriers to accessibility to the Subject Facility in violation of 42 U.S.C. §12182(b)(2)(A)(iv).

123.     Upon information and belief, since 1992 Defendants have altered the areas in their Subject Facility, which affect, or could affect, access to or usability of their place of public accommodation.

124.     The Subject Facility has not been designed, constructed, altered, or maintained in compliance with the accessibility standards of Title III of the ADA.

125.     Defendants have violated their statutory obligation to ensure that their policies, practices and procedures address compliance with the 2010 Standards in that they did not make reasonable accommodations for the individual Plaintiff, and all others similarly situated, and also violated their obligation to remove architectural barriers in order to let disabled individuals enjoy goods and services provided by the public accommodation under their control, thus discriminating against them.

126.     To date, the architectural barriers, the removal of which was, and is, readily achievable, and other violations of the ADA, still exist at the Subject Facility and have not been remedied, or altered, in such a way as to effectuate compliance with the provisions of the ADA.

127.     Pursuant to the ADA, 42 U.S.C. §12101, §12182 and 28 CFR §36.304, Defendants were required to make their Subject Facility accessible to persons with disabilities, and should have removed architectural barriers by January 26, 1992. To date, Defendants have failed to comply with that mandate.

128.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of intentional disability discrimination and is subject to enforcement under 42 U.S.C. §12188 and 28 CFR §503.

129.     It was not structurally impracticable for Defendants to make the Subject Facility accessible.

130.     Removal of all architectural barriers existing at the Subject Facility was, and is, readily achievable by Defendants.

131.     Defendants may, should and are required to make reasonable accommodations at the Subject Facility and their making them would be readily achievable.

132.     Accommodations to Plaintiff, and other persons similarly situated, and removal of architectural barriers at the Subject Facility by Defendants, are readily achievable, would not impose an undue hardship on them and would not fundamentally alter the nature of their program, activity, or nature of the business.

133.     Plaintiff has a realistic, credible, existing and continuing threat of discrimination from Defendants' non-compliance with the ADA in connection with the Subject Facility.

134.     Defendants' failure to make their Subject Facility accessible denied Plaintiff and others, similarly situated, an equal opportunity to participate in, or to benefit from, services, or accommodations, on the basis of their disability.

135.     The effect of the practices complained of has been to deprive Plaintiff, and all other similarly situated individuals, of the full and equal enjoyment of the Subject Facility and to otherwise adversely affect his status as a member of the public interested in accessing the place of public accommodation owned, leased, leased to, constructed, maintained, managed and/or operated by Defendants.

136.     Defendants' Subject Facility is not accessible to, or readily usable by, individuals with disabilities.

137.     Pursuant to 42 U.S.C. §12188, this Court was vested with the authority to grant Plaintiff injunctive relief, including an order to alter the Subject Facility, to make it accessible to, and useable by, Plaintiff, and other similarly situated individuals with disabilities, to the extent required by the ADA, as well as close the Subject Facility until the required modifications are completed.

138.     Defendants' flagrant disregard for the ADA, and the New York laws, which obligate them to make all readily achievable accommodations and modifications to remove architectural barriers to access and use of their Subject Facility is legally inexcusable. Allowing Defendants to deleteriously detrimentally prolong their practices would encourage them to continue to blatantly disregard the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws, and discriminate against Plaintiff, and other similarly situated individuals.

139.     The inexcusability of Defendants' actions is exacerbated by the fact that over 25 years have passed since the effective date of Title III of the ADA. During that time period they operated at a profit, should have accumulated sufficient funds to make alterations and had numerous opportunities to remove the architectural barriers and end discrimination, but intentionally chose not to do so. By intentionally not removing the architectural barriers, which barred Plaintiff's access, inconvenienced and embarrassed him, humiliated him and caused him personal injuries, including emotional distress to him, and others similarly situated, Defendants gave a crystal-clear message to disabled customers that their patronage is neither needed, desired, welcomed, or wanted.

## SECOND CAUSE OF ACTION

### Violations of the New York State Human Rights Laws

140.     Plaintiff re-alleges, and incorporates, by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

141.     The New York State Human Rights Law, in relevant part, provides the following:

> It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation … because of the … disability … of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof … to the effect that any of the accommodations, advantages, facilities and privileges of any such place shall be refused, withheld from or denied to any person on account of … disability … .

NYS Executive Law §296(2)(a)

142.     Defendants' Subject Facility is a place of public accommodation, as defined in New York State Human Rights Law §292(9).

25

143.     Defendants have further violated the New York State Human Rights Law by being in violation of the rights provided under the ADA.

144.     Defendants are in violation of the New York State Human Rights Law by denying Plaintiff, and others similarly situated, full and safe access to all of the benefits, accommodations and services of the Subject Facility.

145.     Defendants do not provide Plaintiff, and others similarly situated, with equal opportunity to use their public accommodation.

146.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law §296(2)(c)(iii).

147.     As a direct and proximate result of Defendants' unlawful discrimination, which is in violation of the Executive Law, Plaintiff has suffered, and continues to suffer, personal injuries, which include emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety.

148.     Defendants have not provided Plaintiff, and others similarly situated, with evenhanded treatment in violation of New York State Human Rights Law §296.

149.     Defendants' direct, or indirect, unequal treatment of Plaintiff, and others similarly situated, was demonstrated when he was discriminated against.

150.     Defendants have, because of Plaintiff's disability, directly, or indirectly, refused, withheld from, or denied him the accommodations, advantages, facilities, or privileges of their public accommodation.

151.     Defendants have demonstrated that the patronage, or custom, of Plaintiff, and other similarly situated individuals, is unwelcome, unwanted, undesirable, unacceptable and objectionable.

152.     In violation of the New York State Human Rights Laws Defendants and their agents discriminated against Plaintiff.

153.     As a direct and proximate result of Defendants' unlawful discrimination, which was, and is, in violation of the New York State Human Rights laws, Plaintiff has suffered, and continues to suffer, personal injuries, such as mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress, embarrassment, anxiety, loss of self-esteem and self-confidence, together with emotional pain and suffering.

154.     Plaintiff requests compensatory damages from each Defendant in the amount of $1,000 under the New York State Human Rights Law, NY CLS Exec §297(9).


## THIRD CAUSE OF ACTION

### Violations of the New York State Civil Rights Laws

155.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth in this complaint, as if fully set forth herein.

156.     Defendants have violated Plaintiff's civil rights on the basis of his disability.

157.     Consequently, Plaintiff is entitled to recover the penalty prescribed by Civil Rights Law §40-c and §40-d, in the amount of $500 for each violation from each Defendant.

158.     Pursuant to the New York Civil Rights law, §40-d, Defendants are guilty of a class A misdemeanor.

159.     Notice of this action is being served upon the attorney general, as required by New York Civil Rights Law, §40-d, in accordance with the statute.

## FOURTH CAUSE OF ACTION

### Violations of the New York City Human Rights Laws

160.     Plaintiff re-alleges, and incorporates by this reference, all the allegations set forth

in this complaint, as if fully set forth herein.

161.     The New York City Human Rights Law, in relevant part, provides the below.

> It shall be an unlawful discriminatory practice for any
> person who is the owner, franchisor, franchisee, lessor,
> lessee, proprietor, manager, superintendent, agent or
> employee of any place or provider of public
> accommodation:
>> 1. Because of any person's actual or perceived …
>> disability …, directly or indirectly:
>>> (a) to refuse, withhold from or deny to such
>>> person the full and equal enjoyment, on
>>> equal terms and conditions, of any of the
>>> accommodations, advantages, services,
>>> facilities or privileges of the place or
>>> provider of public accommodation;

NYC Admin. Code §8-107(4)

162.     Defendants have not reasonably accommodated Plaintiff, and other disabled

individuals, in violation of New York City's Administrative Code §8-102(4), (16), (17),

(18), §8-107(4) and §8-107(15).

163.     In violation of the New York City Administrative Code, Defendants have

unlawfully discriminated against Plaintiff and all others similarly situated.

164.     Reasonable accommodations and modifications are necessary to enable Plaintiff,

and all others similarly situated, the ability to enjoy non-restricted access and use of

Defendants' Subject Facility.

165.     In violation of the New York City Administrative Code the owners, operators,

lessees, proprietors, managers, agents and/or employees of Defendants' Subject Facility

have, because of the actual, or perceived, disability of Plaintiff directly, or indirectly, refused, withheld from, and denied him the accommodations, advantages, facilities, or privileges thereof.

166.     In violation of the New York City Administrative Code, on the basis of Plaintiff's disability, Defendants have demonstrated that the patronage, or custom, of Plaintiff, and all others similarly situated, is unwelcome, objectionable and not acceptable.

167.     Defendants are in violation of the New York City Human Rights Law by denying Plaintiff full and safe access to all of the benefits, accommodations and services of the Subject Facility.

168.     Pursuant to New York City Human Rights Law §8-502(c), notice of this action is being served upon the New York City Commission on Human Rights in accordance with the statute.

169.     As a direct and proximate result of Defendants' disability discrimination, in violation of the New York City Human Rights Laws, Plaintiff has suffered, and continues to suffer, personal injuries, including mental anguish and emotional distress, including, but not limited to, depression, humiliation, stress, embarrassment, anxiety, loss of self-esteem and self-confidence, emotional pain and suffering.

170.     Plaintiff requests compensatory damages in the amount of $1,000 from each Defendant under the New York City Human Rights Law, NYC Admin. Code §8-125.


## ATTORNEY'S FEES AND COSTS

171.     Plaintiff had to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have his reasonable attorney's fees, including litigation

expenses, and costs, including expert fees, paid by Defendants, pursuant to the ADA, 28 CFR §36.505 and New York Executive Law §297(10). Furthermore, pursuant to the New York City Human Rights Law, the Court may award the prevailing party reasonable attorney's fees. Under that law's definition "prevailing" includes a Plaintiff, whose commencement of litigation has acted as a catalyst to effect policy change on the part of Defendant. NYCHRL, in pertinent part, states the below.

> In any civil action commenced pursuant to this section, the Court, in its discretion, may award the prevailing party reasonable attorney's fees, expert fees and other costs. For the purposes of this subdivision, the term "prevailing" includes a Plaintiff whose commencement of litigation has acted as a catalyst to effect policy change on the part of Defendant, regardless of whether that change has been implemented voluntarily, as a result of a settlement or as a result of a judgment in such Plaintiff's favor. The Court shall apply the hourly rate charged by attorneys of similar skill and experience litigating similar cases in New York County when it chooses to factor the hourly rate into the attorney's fee award.

NYC Admin. Code §8-502(g)

## COMPENSATORY AND STATUTORY MONETARY DAMAGES

172.     Plaintiff requests compensatory damages in the amount of $1,000 from each Defendant under the New York State Human Rights Law, NY CLS Exec §297(9) and the New York City Human Rights Law, NYC Admin. Code §8-125.

> In calculating compensatory damages under the NYSHRL and the NYCHRL, a Court in the Southern District of New York just a few months ago found relevant the fact that '[t]he New York City Human Rights Commission has deemed awards of $1,000 to be sufficient in cases where complainants did not establish any particular damage 'other

> than what a decent and reasonable individual would suffer
> when faced with such ignorant behavior.'

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429, (quoting and adapting Kreisler, 2012 WL 3961304, at *14)

173.     Plaintiff requests statutory monetary damages in the sum of $500 from each Defendant to compensate him for their violation of New York Civil Rights Law §40-c and §40-d.

> New York Civil Rights Law §40-c holds that *any person*
> [emphasis added] who shall violate any of the provisions of
> New York Civil Rights Law §40-d 'shall for each and
> every violation thereof be liable to a penalty of not less
> than one hundred dollars nor more than five hundred
> dollars, to be recovered by the person aggrieved thereby in
> any Court of competent jurisdiction in the county in which
> Defendant shall reside. … [T]his Court has the authority to
> order Defendant to pay Plaintiff the $500 in statutory
> damages contemplated by the New York Civil Rights Law
> for the disability discrimination Plaintiff has suffered… .

Shalto v. Bay of Bengal Kabob Corp., 2013 WL 867429

174.     The reason Plaintiff requests $500 from each Defendant, and not a lower amount envisioned by the statutes, is due to the high number and extent of the violations, which were alleged in detail in this complaint. Furthermore, the number of violations may be even greater, and they may be even more extensive, than those alleged here and it is likely that they will be revealed upon inspection of the Subject Facility by an expert.

## PUNITIVE DAMAGES

175.     Plaintiff requests punitive damages from each Defendant to compensate him for

their violation of the New York City Human Rights Law.

> With respect to punitive damages, "the standard for determining damages under the NYCHRL is whether the wrongdoer has engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" Chauca v. Abraham, 885 F.3d 122, 124 (2d Cir. 2018) (quoting Chauca v. Abraham, 30 N.Y.3d 325, 67 N.Y.S.3d 85, 89 N.E.3d 475, 481 (N.Y. 2017)). This standard requires "a lower degree of culpability" than is required for punitive damages under other statutes, as it "requires neither a showing of malice nor awareness of the violation of a protected right." Id. (quoting Chauca, 89 N.E.3d at 481).

Kreisler v. Humane Soc'y of N.Y., 2018 U.S. Dist. LEXIS 171147

## INJUNCTIVE RELIEF

176.     Pursuant to 42 U.S.C. §12188 this Court is vested with the authority to grant

Plaintiff injunctive relief, including an order to alter the Subject Facility to make it

readily accessible to, and useable by, individuals with disabilities to the extent required

by the ADA, the New York State Civil Rights Law, the New York State Human Rights

Law, the New York City Human Rights Law and close the Subject Facility until the

requisite modifications are completed.

177.     Plaintiff requests the Court to issue a permanent injunction enjoining Defendants

from disability discrimination.

178.     Plaintiff requests the Court to issue a permanent injunction and order Defendants

to alter their Subject Facility to make it readily accessible to and usable by individuals

with disabilities. To achieve that, Plaintiff requests the Court to adapt relief ordered in Shariff v. Alsaydi, 2013 WL 4432218. Plaintiff requests the Court to order Defendants to prepare architectural plans remedying the violations of the 2010 Standards and to provide Plaintiff's counsel with those plans for review within 60 days of the Court's order. Plaintiff also requests that the injunction provide him with 30 days to file a motion seeking relief should Defendants' proposed architectural plans be inadequate to remedy the 2010 Standards violations specified in this complaint. Plaintiff further requests that the injunction requires Defendants to implement the architectural plans and remedy the violations within 60 days of either Plaintiff's agreement, or a ruling by the Court stating that the plans are adequate.

179.     Plaintiff requests the Court to issue a permanent injunction requiring Defendants to make all necessary modifications to Defendants' policies, practices and procedures, so that Plaintiff, and other persons similarly situated, would not be subject to further unlawful discrimination.

180.     Injunctive relief is also necessary to order Defendants to provide auxiliary aid, or service, and/or alternative methods, to allow Plaintiff, and others similarly situated, to use the place of public accommodation in accordance with Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws.

## DECLARATORY RELIEF

181.     Plaintiff is entitled to a declaratory judgment concerning the violations of the ADA, the New York State and the New York City laws committed by Defendants

specifying the rights of Plaintiff, and other persons similarly situated, as to the removal of the architectural barriers from Defendants' Subject Facility by Defendants and as to their policies, practices, procedures, facilities, goods and services.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff hereby respectfully requests judgment against Defendants and that this Court grants the following relief:

A.   Certifies this case as a class action;

B.   Grants a permanent injunction

   i.)  Enjoining Defendants, their officers, management personnel, employees, agents, successors and assigns from engaging in discrimination based on disability;

   ii.) Requiring Defendants to alter their Subject Facility to make it readily accessible to, and usable for, individuals with disabilities;

   iii.) Compelling Defendants to make all necessary modifications to their policies, practices and procedures, so that Plaintiff would not be subject to further discrimination;

   iv.) Ordering Defendants to provide auxiliary aids and services, as well as to modify their policies, or procedures, or provide an alternative method, so that Plaintiff would be able to obtain the full and equal enjoyment of the Subject Facility owned, operated, maintained, or leased, by Defendants, in accordance with Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws; and

34

v.) Ordering Defendants to make the Subject Facility readily accessible to and usable by individuals with disabilities.

C.  Enters declaratory judgment specifying Defendants' violations of the ADA, the New York State Civil Laws, the New York State Human Rights Laws and the New York City Human Rights Laws and declares the rights of Plaintiff, and other persons similarly situated, as to Defendants' policies, procedures, facilities, goods and services offered to the public;

D.  Enters declaratory judgment specifying that the Subject Facility owned, operated, leased, controlled, maintained and/or administered by Defendants violates the ADA, the New York State Civil Rights Law, the New York State Human Rights Law and the New York City Human Rights Law;

E.  Enters an order requiring Defendants to alter their Subject Facility and amenities to make it accessible to, and usable by, individuals with disabilities to the full extent required by Title III of the ADA, the New York State Civil Rights Laws, the New York State Human Rights Laws and the New York City Human Rights Laws;

F.  Holds each of Defendants liable for $500 in statutory monetary damages for each violation and awards that sum to Plaintiff pursuant to New York State Civil Rights Laws §40-c and §40-d;

G.  Holds each of Defendants liable for compensatory damages in the amount of $1,000 under the New York State Human Rights Law and the New York City Human Rights Law.

H.  Holds each of Defendants liable for punitive damages for their violation of the New York City Human Rights Law.

I.     Finds Defendants guilty of class A misdemeanor pursuant to New York State Civil Rights Law §40-d;

J.     Retains its jurisdiction over Defendants until their unlawful practices, acts and omissions no longer exist;

K.     Finds that Plaintiff is a prevailing party in this litigation and awards attorney's fees, expert fees, costs and expenses, together with such other and further relief at law, or in equity, to which Plaintiff, and other persons similarly situated, may be entitled; and

L.     Awards such other and further relief as it deems necessary, just and proper.


### JURY DEMANDED

Plaintiff demands a trial by jury of all the issues of fact and damages.


Signed: June 4, 2020

*Michael Grinblat*

Michael Grinblat, Esq. (4159752)

Law Offices of Michael Grinblat
10 East 39th Street, 12th Floor
New York, NY 10016
Tel:  (347) 796-0712
Fax: (212) 202-5130
Email: michael.grinblatesq@gmail.com
*Attorney for Plaintiff*